**CITY OF MISHAWAKA, Indiana, on Behalf of its DEPARTMENT OF REDEVELOPMENT, Appellant (Plaintiff Below),**

v.

**FRED W. BUBB FUNERAL CHAPEL, INC., Appellee (Defendant Below).**

No. 4–583A160.

Court of Appeals of Indiana, Fourth District.

Oct. 23, 1984.

Rehearing Denied Dec. 7, 1984.

Edward A. Chapleau, South Bend, for appellant.

John Schindler, Jr., Schindler & Olson, Mishawaka, for appellee.

MILLER, Presiding Judge.

In this condemnation case, appellee, Fred W. Bubb Funeral Chapter, Inc. (Bubb), owned a funeral home and a warehouse in Mishawaka, Indiana. The warehouse, where limousines and caskets were stored, was located two city blocks away from the funeral home. When the City of Mishawaka condemned the warehouse property, Bubb sought damages to the funeral home property as "damages to the residue" and the trial court, accepting Bubb's theory that the funeral home was part of the residue, awarded damages both for the value of the warehouse property and for residual damages to the funeral home. The trial court also awarded Bubb an additional $2,500 for litigation expenses since the award exceeded the City's last offer of settlement pursuant to IND.CODE 32–11–1–10.

The City raises a number of issues in this appeal. Because we reverse, we address only two:

(1) Whether the funeral home, located two blocks away from the property condemned by the City, was properly considered as residue property; and

(2) Whether the trial court erroneously awarded Bubb litigation expenses pursuant to I.C. 32–11–1–10.

## FACTS

Bubb owned and operated a funeral home business in Mishawaka, Indiana. The funeral parlor was located on a parcel of land owned by Bubb at 204 North Main Street. Bubb also owned another parcel of land two city blocks away on which a garage/warehouse was located. The City of Mishawaka (City) sought to condemn the second parcel by this action.

On February 5, 1982, the trial court entered an order, stipulated to by the parties, appropriating the real estate, appointing appraisers, and approving instructions to the appraisers. On February 12, 1982, the appraisers filed their report assessing damages to Bubb for the land sought to be appropriated and the improvements thereon in the amount of Thirty-Four Thousand Dollars ($34,000.00). The appraisers also specifically found there was no damage to the funeral parlor, or the remaining property owned by Bubb. On February 24, 1982, Bubb filed exceptions to the report of the appraisers, alleging the damages assessed for the value of the land sought to be appropriated were too low and that he was entitled to damages for the loss of value to the residue of his property.

The City filed a motion for partial summary judgment on the issue of residual damages claiming that since the City appropriated an entire tract of Bubb's land, there could be no residue left to be damaged. This motion was overruled and trial commenced on January 17, 1983, without a jury. On January 29, 1983, the court rendered judgment in favor of Bubb on his exceptions to the appraisers report in the amount of Seventy-Eight Thousand Dollars ($78,000.00). Both parties filed Motions to Correct Errors, and the court rendered its amended judgment on April 25, 1983, awarding Seventy-Eight Thousand Dollars ($78,000.00), consisting of:

1. The fair market value of the garage/warehouse property: $41,-500.00

2. The damages to the residue of the property of the defendant (funeral home parcel) caused by taking out the part appropriated: $36,500.00

The judgment also awarded litigation expenses of $2,500.00.

## DECISION

The Indiana Eminent Domain Statute, IND.CODE 32–11–1–6 provides the measure of damages and benefits allowed for the taking of property by condemnation. In pertinent part, it allows for "damages, if any to the residue of such owner or owners to be caused by taking out the part sought to be appropriated." The City contends this section applies only to partial taking of a single tract. Since the entire tract of land at First and Spring Streets was condemned, the City argues there is no residue left to suffer damages. Under this theory, a separate parcel of land cannot suffer residual damages even if owned by the same person, as is the case here.

Bubb's position, with which the trial court agreed, is that he was using the two separate tracts as integral parts of his funeral home business. The property located at 202 West Main held the funeral parlor itself and a small parking lot, while the lot at First and Spring Streets held a garage/warehouse used for storing limousines and caskets. Bubb contends that because the properties were used together in business they should be treated as one tract, the partial taking of which will result in residue. Bubb presented evidence that a garage/warehouse was a necessity to a funeral business, a fact not disputed by the City, and the trial court concluded his funeral home tract was damaged by the taking of the garage/warehouse.

■ Indiana follows the general rule that to award damages for a severance of a single tract there must be unity of title, unity of use and *contiguity*. *State v. Heslar*, (1971) 257 Ind. 307, 274 N.E.2d 261; *See also City of Elkhart v. No-Bi Corp.*, (1981) Ind.App., 428 N.E.2d 43; *State v. Church of Nazarene of Logansport*, (1976) Ind.App., 354 N.E.2d 320; *modified* (1978) 268 Ind. 523, 377 N.E.2d 607. In the case at bar, the City argues the required ele-

ment of contiguity is lacking, barring Bubb's claim for severance damages to the property upon which the funeral home was located.

Indiana courts have not previously defined contiguity other than to specify it is a required element for severance damages. The City argues that actual physical contiguity is required—the property taken must "touch" the residue which is claimed to be damaged. No Indiana case has addressed this issue. *Church of Nazarene* and *City of Elkhart* involved residue properties that were physically contiguous to the properties condemned.

An examination of decisions in other jurisdictions reveals that while actual physical contiguity is ordinarily required for severance damages it is not essential. A majority of states will award damages for the "severing" of separate parcels if there is unity of use. *See, e.g. Board of Transportation v. Martin,* (1978) 296 N.C. 20, 249 S.E.2d 390; *State by Commissioner . of Transportation v. Bakers Basin Realty Co.,* (1977) 74 N.J. 103, 376 A.2d 1189; *Moore v. County of Montgomery,* (1975) 22 Pa.Cmwlth. 262, 348 A.2d 762; *Sauvageau v. Hjelle,* (1973) N.D., 213 N.W.2d 381; *State Highway Comm. v. Renfro,* (1973) 161 Mont. 251, 505 P.2d 403; *Victor Co. v. State,* (1971) 290 Minn. 40, 186 N.W.2d 168; *DiVirgilio v. State,* (1968) Fla., 205 So.2d 317; *Petition of Mackie,* (1967) 8 Mich. App. 299, 154 N.W.2d 631; *Ives v. Kansas Turnpike Authority,* (1959) 184 Kan. 134, 334 P.2d 399.

In the federal courts, the rule is one of integrated use. In *Baetjer v. United States,* (1st Cir.1944), 143 F.2d 391, the court stated: "Integrated use, not physical contiguity is the test whether land condemned is part of a single tract warranting award of severance damage, but physical contiguity is important as bearing on unity of use, and separation remains an evidentiary, not an operative fact." In *Baetjer,* the court awarded severance damages although the parcels were 17 miles apart, because they were integrated parts of a sugar cane business.

While *Baetjer* is indicative of the expansive stance courts have taken on the award of severance damages, it is still the rule in most jurisdictions that a mere business relationship between the separate parcels will not suffice. There must be such a connection or relation of adaptation, convenience and actual and permanent use as to make the enjoyment of the parcel. taken reasonably and substantially necessary to the enjoyment of the parcels left, in the most advantageous and profitable manner in the business for which they are used. *Sharp v. United States,* (1903) 191 U.S. 341, 24 S.Ct. 114, 48 L.Ed. 211; *Housing Authority of City of Newark v. Norfolk Realty,* (1976) 71 N.J. 314, 364 A.2d 1052; *City of Los Angeles v. Wolfe,* (1971) 6 Cal.3d 326, 99 Cal.Rptr. 21, 491 P.2d 813; *State v. Halverson,* (1963) 86 Idaho 242, 384 P.2d 480; *State v. South Main Baptist Church,* (1962) Tex.Civ.App., 361 S.W.2d 898; *City of Quincy v. V.E. Best Plumbing & Heating, Supply Co.,* (1959) 17 Ill.2d 570, 162 N.E.2d 373; *City of Chicago v. Equitable Life Assurance Society,* (1956) 8 Ill.2d 341, 134 N.E.2d 296.

In *City of Quincy v. V.E. Best Plumbing & Heating Supply Co.,* the City condemned a lumber yard for a public parking lot. The owner of the lumber yard alleged the lumber yard was an integral part of the owner's mill property located three blocks away and claimed damages to the mill property not taken. The Illinois Supreme Court found the owner had failed to establish contiguity and overruled the trial court's award of residue damages. The court stated:

"We fail to see how the mere facts that there was little or no duplication of use of facilities upon each property, that all sales were made from the lumber yard, that the office was only on the lumber yard property, and that the operations conducted on each property were an integral part of one unified business render one property necessarily and permanently damaged by the taking of the other ... The most that can be said is that these properties are convenient and bene-

ficial to one another ... They cannot for purposes of this proceeding, be considered as a single property."
162 N.E.2d 373.

 Since our supreme court has stated that contiguity is a necessary element for an award for severance damages, *State v. Heslar, supra,* we are obliged to look closely at any rule that excepts this requirement. The majority rule that separate parcels can be treated as one tract if put to an integrated use should only be applied where the parcels are so inseparably entwined that the taking of one necessarily injures the other. *Sharp, supra, City of Quincy, supra.* In this case, Bubb and William Welsheimer testified that storage space was necessary to the operation of a funeral home business. We fail to see, however, why *this* particular storage space was necessary. Bubb testified he had leased another warehouse after his property was condemned and was using it to store his limousines and caskets. While we acknowledge that Bubb was not completely satisfied with this warehouse, he did testify that he is going to purchase it. The only reasonable inference from this evidence is that the garage/warehouse condemned by the City was not *necessary* to the successful operation of Bubb's funeral home, and he will continue in business.[1]

Many businesses need warehouse space. Consequently, many properties are developed for such use. We think the situation rare where a business is necessarily and irrevocably damaged by the taking of a garage/warehouse facility. As Bubb's testimony indicates he has replaced his warehouse with another. The fact that his new warehouse is not as convenient or quite as large does not elevate the old warehouse to the status of a necessary element to his funeral home business. In sum, we hold

Bubb has not met his burden of showing the properties were contiguous as required by Indiana law. *State v. Heslar, supra.* Nor has he shown the properties to be so intertwined in use that the taking of the garage/warehouse tract necessarily injured the funeral home tract. We reverse the portion of the trial court's verdict awarding Thirty Six Thousand Five Hundred Dollars ($36,500.00) for damage to the funeral home tract.

The trial court also awarded Bubb litigation expenses in the amount of Two Thousand Five Hundred Dollars ($2,500.00) pursuant to IND.CODE 32–11–1–10 which provides:

"The costs of the proceedings shall be paid by the plaintiff, except that in case of trial the additional costs thereby caused shall be paid as the court shall adjudge. However, if in case of trial, the amount of damages awarded to the defendant by the judgment, exclusive of interest and costs, is greater than the amount specified in the last offer of settlement made by the plaintiff under section 8.1 [32–11–1–8.1] of this chapter, the court shall allow the defendant his litigation expenses in the amount not to exceed twenty-five hundred dollars ($2,500)."

 In his Motion to Correct Errors, Bubb admits the City's last offer of settlement was Forty-One Thousand Five Hundred Dollars ($41,500.00). His award after our modification is also Forty-One Thousand Five Hundred Dollars ($41,500). The statute allows for litigation expenses only if the award is *greater* than the last offer of settlement. Consequently, we must also reverse the award of litigation expenses. Our judgment is that Bubb receive the fair

---

1. Bubb's position is that the funeral home tract is damaged because he is unable to find a substantially similar garage/warehouse. This position is inherently speculative as the amount of damage will vary according to the similarity of property available.

 Bubb's own appraiser testified that if another garage/warehouse becomes available there

would be no damages to the funeral home tract. Any measure of damages that is based on sufficiency of available garage space is using the principle of substitution. This principle is ... to be considered in assessment of dam... eminent domain proceedings in Indiana. ... *v. Lincoln Memory Gardens,* (1961) 242 Ind. 206, 177 N.E.2d 655.

market value of the tract appropriated: $41,500.00.

CONOVER and YOUNG, JJ., concur.